## Mary E. Gard, Administratrix, v. Chicago & Alton Railroad Company, Appellant.

RAILROADS—*when verdict is contrary to the evidence.* Where plaintiff's intestate, a boy of fifteen, while standing on the west track of defendant's double track waiting for a freight train to pass on the east track, is struck by an engine running on the west track, and the evidence shows that intestate had good eyesight and hearing, was familiar with the surroundings and that his view of the engine which struck him was unobstructed, intestate's want of ordinary care is shown to be the cause of his death and a verdict in favor of plaintiff cannot be sustained.

Appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the October term, 1912. Reversed with finding of fact. Opinion filed March 18, 1913.

PATTON & PATTON, for appellant; SILAS H. STRAWN, of counsel.

L. F. HAMILTON and C. J. CHRISTOPHER, for appellee.

MR. PRESIDING JUSTICE THOMPSON delivered the opinion of the court.

Mary E. Gard, administratrix of the estate of William P. Gard, deceased, brought this action in case against the Chicago & Alton Railroad Company to recover damages suffered by reason of the death of her son, William P. Gard. The declaration contains several counts averring that the defendant operates a railroad in the city of Springfield, across a public street called south Grand avenue, well knowing that a great number of persons on foot and otherwise were constantly on said avenue passing across said railroad track; that a locomotive with a car attached to the front end was being driven southerly toward said avenue with the rear end of the engine being driven in

front, and that the deceased while walking on said avenue in the exercise of due care was struck by said locomotive and killed. The negligence averred in the several counts is that a flagman at the crossing failed to warn the deceased of the approach of the train; that the train was run at a high and dangerous rate of speed; that the ordinances of the city of Springfield limit the speed of passenger trains to not exceeding ten miles an hour, and freight trains or cars to not exceeding six miles an hour, and that a freight train running at to-wit, ten miles an hour struck and killed the intestate; that defendant failed to ring a bell or blow a whistle; and that the defendant failed to have bars or gates at the crossing of Grand avenue. The plea was the general issue. A jury returned a verdict in favor of plaintiff for $4,500 on which judgment was rendered and the defendant appeals.

It is insisted that the court erred in refusing to direct a verdict for the defendant for the reason that the deceased was not in the exercise of due care at the time of the accident.

The evidence shows the facts to be, that the defendant has a double track railroad running on Third street, which is a street running north and south and paved between a curbing just outside the tracks and the curbing near the sidewalks, so that travelers drive north and south on that street; that the west track is used by trains going south, and the east track by trains going north; that Grand avenue crosses Third street and the defendant's tracks at right angles; that the deceased at the time of the accident was a boy of the age of fourteen years and five months, who lived on the east side of the railroad; that on the morning of the accident he crossed the tracks to go to a pasture on the west side of the railroad and south of Grand avenue to milk the family cow; that after milking the cow he started home going through a hole in the fence from the pasture to Third street a few feet south of Grand avenue and carrying his pail walked north to

Grand avenue and east towards the railroad tracks. At that time a long freight train, with the bell ringing and making much noise, was passing north across Grand avenue on the east railroad track; that a flagman at the crossing was on the east side of the freight train, he having gone to that side of the train so as to notify travelers on the street coming from the east, if it was safe for them to cross the tracks after the freight train had passed; that an engine was backing south going at the rate of between six and ten miles an hour, on the west track pulling a freight car; that the deceased from where he came through the fence had a clear, unobstructed view north along Third street of the south-bound track for upwards of a mile; that as the engine approached Grand avenue the fireman was on the west side of the engine and the engineer on the east side; that the fireman as the engine approached the avenue saw the boy walking east towards the track and thought the boy would walk up to within a few feet of the track and stop and when he saw he was not going to stop he shouted to the engineer to stop and shouted at the deceased; and that the tank on the tender concealed the boy from the engineer and he did not hear the shout of the fireman until the boy was struck.

There is a conflict in the evidence as to whether the bell on the locomotive that struck the deceased was ringing. There is evidence by witnesses that they did not hear the bell ringing, but the preponderance of the evidence appears to be that it was ringing but the noise of the freight train drowned the sound of the bell on the engine that struck the deceased.

The flagman on the east side of the freight train saw the deceased approaching from the west through the spaces between the cars as they passed, but was unable to notify the deceased of the danger because of the intervening train.

The deceased was in his fifteenth year, with good eyesight and hearing, intelligent and familiar with

the surroundings and the running of trains over these tracks. The view of the train which struck him was unobstructed. It was running in bright daylight in the direction that trains ran upon that track, and he appears to have kept his head turned, so that he could only see in the direction from which trains did not come on that track. There was no occasion for hastily going on the south-bound track and no inducement or incentive for going on that track as he could not cross the other track because of the train going north on it. The deceased without any excuse negligently stepped in front of the approaching train which at a speed, not exceeding from six to ten miles an hour was running in the proper direction on its track, when the slightest care would have revealed its approach to him. It is clear that his want of ordinary care was the proximate cause of his death, and the judgment cannot be sustained. It is therefore reversed with a finding of fact.

*Reversed with finding of fact.*

Finding of fact: The deceased was not in the exercise of ordinary care at the time he was struck by the train.